Charles BRANT *v.* Curtis Eugene SORRELLS, Special
Administrator of the Estate of Jeffrey Leonard Sorrells,
Deceased

87-117                                              737 S.W.2d 450

Supreme Court of Arkansas
Opinion delivered October 12, 1987

*Jones, Gilbreath, Jackson & Moll,* by: *Robert L. Jones, Jr.*
and *Charles R. Garner, Jr.,* for appellant.

*Martin Vater, Karr & Hutchinson,* by: *Charles Karr,* for
appellee.

ROBERT H. DUDLEY, Justice. A jury returned a defendant's
verdict in this wrongful death case. The trial court granted the
plaintiff's motion for a new trial on the ground that the verdict
was clearly against the preponderance of the evidence. We affirm.

On Monday night, at about 10:00 p.m., Jeff Sorrells, the nineteen year old victim, phoned Diana Brant, the defendant's seventeen year old daughter, and said that he needed to talk to her, in person, about something very important. Jeff lived across the street, and he and Diana had been friends since childhood. Diana told Jeff that she would flash her bedroom light at midnight, and if he saw the light he could come to her window to talk. She testified that she had no intention of actually flashing her light, but just told him that to get him off the phone.

Diana went to bed around 10:30 p.m., shortly after talking with Jeff. About midnight, Diana was awakened by a knock at her window. She recognized Jeff's voice as he asked her to open the window. She continued to lie in her bed and did not move. She heard a noise, as if Jeff were trying to pry the screen off of her window. She felt a cold breeze, indicating the window was open, and got up to go to her parents' bedroom.

Her parents were asleep, and the house was dark. She testified that she awakened her father and said, "Dad, Dad, Jeff is trying to get in my window." Defendant's wife confirmed that Diana spoke Jeff's name. The defendant, however, denied hearing Jeff's name mentioned at that time. The defendant got his pistol from under the mattress and headed for Diana's room, despite Diana's plea that he not take his weapon. Diana and her mother stayed in the parents' bedroom. Diana heard her father say something which she thinks was, "Get your G___ D___ ass out of my house." Then she heard her father fire the pistol. The next day Jeff's body was found nearby with a bullet wound in the back. The bullet had entered his left mid-back, traveled horizontally through his body, and exited his left mid-chest.

The defendant testified that as he entered Diana's bedroom, he felt cold air on his legs indicating the window was open. There was no light in the room. He heard the rustling of window shades. He stepped around the corner of an abutment in the room and saw what looked like a head and part of an upper body creating an image on the window shade. He could see hands underneath the shade. By that time he was halfway into the room, continuing to approach the window, when he stepped on a beanbag and was thrown forward. The shadowy figure disappeared. Defendant testified that he grabbed the window shade, pulled it back, and the

screen was pushed in. He said he just stuck the gun up and fired down to scare whoever it was. Defendant then leaned forward a little and saw a glimpse of someone heading toward the street. He testified that he had no reason to believe that he had hit the intruder when he fired his gun. Defendant told the police he thought he was shooting down into the ground. A subsequent search of the ground under the window with a metal detector did not reveal a bullet.

The trial judge, in granting a new trial, did not properly specify his reasons. Rule 16, Uniform Rules for Circuit and Chancery Courts. His order recites simply that the verdict "is clearly against the preponderance of the evidence." Therefore, the burden is on the plaintiff, appellee, to show that the trial court did not err in granting the new trial. Rule 16, *id*. The plaintiff has met that burden.

The defendant, appellant, argues that if we affirm the trial court's granting of a new trial we would be allowing the trial judge to substitute his view of the evidence for that of the jury and cites *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982). The argument is without merit. The trial judge may not take away the litigant's right to a jury trial by substituting his view of the evidence for that of the jury; but, regardless of the rhetoric used, he may grant a new trial when a miscarriage of justice has occurred. Further, when the trial court finds such a miscarriage of justice, or a "verdict clearly against the preponderance of the evidence," ARCP Rule 59(a)(6), and grants a new trial, we will affirm unless he has clearly abused his discretion. *Saber Mfg. Co.* v. *Thompson*, 286 Ark. 150, 689 S.W.2d 567 (1985). Here, the trial judge did not abuse his discretion because the overwhelming weight of evidence was that the defendant knew that a neighborhood boy was outside the window and the physical evidence shows that he shot the boy in the back.

Affirmed.

NEWBERN, J., not participating.