Richard SCHRADER and Betty Schrader, Individually as
Next Friend of David Schrader *v.* James Edward BELL and
Barbara Bell

89-138                                                        781 S.W.2d 466

Supreme Court of Arkansas
Opinion delivered December 18, 1989

*Pryor, Barry, Smith & Karber*, by: *Thomas B. Pryor*, for appellants.

*Gary D. Person* and *Bill R. Perceful*, for appellees.

ROBERT H. DUDLEY, Justice. The jury returned a defendant's verdict in this case involving a car wreck at an intersection. The trial court granted the plaintiff's motion for a new trial. We reverse and dismiss.

In 1982, we amended ARCP Rule 59(a)(6) to state that a trial judge can set aside a jury verdict only when it is "clearly contrary to the preponderance of the evidence. . . ." *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982). The trial judge cannot substitute his view of the evidence for that of the jury. *Bryant* v. *Sorrells*, 293 Ark. 276, 737 S.W.2d 450 (1987). If the trial judge denies the motion for a new trial, we will affirm if there is any substantial evidence to support the verdict. If he grants the motion for a new trial, we will affirm if he did not abuse his discretion in finding that the verdict was clearly against the preponderance of the evidence. *Brown* v. *Wilson*, 282 Ark. 450, 669 S.W.2d 6 (1984). In this case the trial judge abused his discretion because the jury's verdict was not clearly against the evidence.

Appellant Scott Schrader, a sixteen-year-old high school student who had gone home for lunch, got into his father's Chevrolet Malibu to drive back to school. He had not driven that particular car in four weeks, but when he last drove it, the brakes worked satisfactorily. According to appellant, he left home and started down a rather long hill at about 30 or 35 miles per hour in a 30 mile per hour zone. The road curved, and he began to apply his service brakes. They worked satisfactorily, and he was unaware they might later fail. He continued to slow down because there

was a stop sign at the intersection at the bottom of the hill. When he was 10 to 15 feet from the stop sign, and going 10 to 15 miles per hour, he began to apply more pressure to the brake pedal. He had both feet on the brake pedal. Suddenly, and without warning, the pedal went to the floor, and the service brakes failed. Appellant, headed in an easterly direction, ran past the stop sign and into the intersection. He testified that, as he entered the intersection, he took evasive action by swerving to the right, but could not keep from running into appellee's pick-up truck. He stated that his testimony was substantiated by the physical evidence which does show that the far left part of appellant's front bumper struck appellee's right door.

Appellee was driving his pickup truck in a southerly direction on the intersecting road. He testified that his speed was about 35 miles per hour in a 40 mile per hour zone. He stated that as he approached the intersection he noticed that appellant, who was going 15 to 20 miles per hour, was excited and trying to do something like apply the brakes, but it was obvious appellant's car was going to ram appellee's truck. Appellee swerved into the left lane, and appellant's car hit the right side of his truck. Appellee did not state whether appellant attempted to swerve his car or take any other evasive action to avoid the wreck. He was asked a question which was designed to elicit such testimony, but it did not do so. The question and answer were:

> Q.  Did you see the defendant [appellant] do anything to try to avoid this wreck?
>
> A.  Er—he appeared to be doing something in the car, I'm not sure if he was—er—if he—if he was just excited or scared or what, but he appeared to be applying the brake.

Appellant put on evidence by an expert mechanic witness who testified that he examined the service brakes on appellant's car after the accident and found that the master cylinder had blown out the seals on both ends. He stated that on rare occasions a master cylinder without separate pistons, like the one on appellant's car, can blow out both seals and, when that happens, the service brakes can go out without warning. Further, there would be no leakage or puddling on the surface under the car to warn a driver who is about to enter the car because the leakage is internal. Also, the hydraulic braking system is a pressure system

and when the seals are out there is no pressure resistance. It is like "pushing a pencil through a glass of water—there wouldn't be any resistance there." Additionally, the appellee did not request an instruction on the duty to maintain brakes in good working order, Ark. Code Ann. § 27-37-501 (1987), or on the speed limit applicable to appellant's car.

The jury heard the above evidence and the instructions by the trial court and determined that the appellant was not negligent. The trial court granted a new trial because he felt the appellant (1) failed to operate his vehicle in a proper manner, (2) failed to maintain proper control, (3) failed to take evasive action, and (4) failed to react in a proper manner. In so ruling, the trial court abused its discretion.

There was no showing that the accident was caused by appellant's failure to operate his vehicle in a proper manner. Appellant testified that at the top of the hill he was driving 35 miles per hour, and another time he said he was driving 30 miles per hour at that point. The speed limit there was 30 miles per hour. However, he stated he had reduced his speed halfway down the hill to 10 to 20 miles per hour. Appellee stated that appellant was only going 15 to 20 miles per hour, so speed was not a factor which contributed to the accident. There was no suggestion that appellant was out of his lane or violating any of the rules of the road immediately before his brakes failed. There was no instruction on failure to maintain brakes. There was no showing that appellant was at fault in failing to anticipate an abrupt breakdown in his service brake. There was no showing that appellant failed to swerve or take other evasive action.

The appellant only attempted to use his service brakes; he did not attempt to use his emergency brake. At first blush this might seem negligent. However, appellant's service brake failed when he was 10 to 15 feet from the intersection, and he was traveling at a speed of 10 to 20 miles per hour. At 20 miles per hour, he would be traveling 29.33 feet per second, and at 10 miles per hour 14.67 feet per second. Thus, from the time his service brakes failed and he was applying pressure with both of his feet on the brake pedal, he had less than a second to realize what had happened, react, take his left foot off the service brake pedal, get his left foot on the emergency brake pedal, and apply pressure.

■ Under these circumstances, the trial judge abused his discretion in holding that the jury verdict was *clearly* against the preponderance of the evidence.

■ Appellee asks us to affirm the trial judge's ruling by applying the standard of strict liability. *See Stevens* v. *Wood Sawmill, Inc.*, 426 N.W.2d 13 (S.D. 1988). We do not address the argument. Appellee is asking for affirmative relief, as he is asking for a finding of liability against appellant based on strict liability. He did not make such a request at trial. He did not cross-appeal. The jury was instructed, without objection, that a finding of negligence was necessary. Accordingly, we do not consider applying the standard of strict liability in this case.

Reversed and dismissed.

PURTLE, J., dissents in part and concurs in part.

JOHN I. PURTLE, Justice, dissenting in part and concurring in part. I am pleased to see that the majority has, somewhat belatedly, joined my dissent in *Penny* v. *Phillips*, 298 Ark. 481, 769 S.W.2d 4 (1989). The similarities between this case and *Penny*, decided a mere seven months ago, are striking. *Penny* involved a teenage-driver who didn't see a curve and skidded off a road into a ditch, injuring a passenger. The driver had not been speeding, drinking, or violating any highway rule at the time of the accident, and the jury found no negligence on his or his parents' part. The trial court ruled that the verdict was clearly against the preponderance of the evidence, and this court affirmed his order for a new trial, noting: "[W]here the trial court has ordered a new trial, it is more difficult to establish an abuse of discretion than when a new trial is denied." 298 Ark. at 483, 769 S.W.2d at 5.

The language and reasoning in *Penny* is weighted almost totally toward the trial court's discretionary powers. Little attention is paid to the jury's function as finder of fact or to the actual application of the amended clause in ARCP Rule 59(a)(6)—"*clearly* against a preponderance of the evidence." As I stated in my dissent in *Penny*: "The evidence set out in the opinion is sufficient to establish that the facts were fairly evenly divided, thereby presenting a jury question. . . . It seems to me that the trial court substituted its judgment for that of the jury."

298 Ark. at 484, 769 S.W.2d at 6.

The *Penny* decision is an anomaly in the law as it has developed since our holding in *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982). It overturned seven years' worth of opinions interpreting and applying the 1982 amendment to Rule 59(a)(6) and, as I pointed out in my dissent, "reverted to the rule as it existed prior" to *Clayton* and the amended rule. The majority opinion in the present case makes no attempt to come to terms with the peculiarity of *Penny*. Now, after I have come to accept the majority decision in *Penny* as the definitive word on this issue, I find that a decision has been reached in this case totally at odds with the majority's view as expressed on May 1 of this year. I am gratified that the majority now agrees with my dissent in *Penny* and with the court's holdings in *Clayton* v. *Wagnon* and *Wilson* v. *Kobera*, 295 Ark. 201, 748 S.W.2d 30 (1988), among others.

Still, however, the question remains: If the decision in *Penny* was right, how can the decision in this case—and the body of cases from *Clayton* to *Penny*—also be right? The concluding paragraph in *Penny* is squarely on point with the present case and deserves to be quoted:

> Having examined the evidence carefully, we conclude that the appellants have failed to show that the trial court's discretion was abused. In addition to having heard the testimony in its entirety, the trial court had the benefit of photographs and a diagram of the accident scene which are not in the abstract. There is no contention that Dana Phillips was in any manner at fault and the testimony of Chris Penny, however one may choose to interpret it, points unerringly to a failure to maintain a proper lookout or a failure to maintain proper control over his vehicle as proximate causes of the collision.

298 Ark. at 483-484, 769 S.W.2d at 5-6. In this case the trial court, like the *Penny* court, had the benefit of photographs and diagrams, and was able to observe the demeanor of the parties as they testified. *Penny* changed the law, and we are changing the law again today. I can only assume that we have implicitly overruled *Penny* and restored the *Clayton* line of cases as our standard.

I am glad this court has come around so soon to my way of thinking. I can now retire with a sense that my opinions have, after all, sometimes had an effect. I only hope that in the future my dissents relating to the Bill of Rights and other constitutional issues will have an equal impact.