James H. YOUNG *v.* Tammy Lynn HONEYCUTT

95-1209                                                       919 S.W.2d 216

Supreme Court of Arkansas
Opinion delivered April 15, 1996

*Pryor, Barry, Smith, Karber & Alford*, by: *Ben T. Barry*, for appellant.

*Jones, Jackson & Moll PLC*, by: *Kendall B. Jones* and *J. Scott Hardin*, for appellee.

BRADLEY D. JESSON, Chief Justice. The jury returned a defendant's verdict in this case involving an automobile accident on a highway bridge. The trial court granted the plaintiff's motion for new trial, from which the defendant appeals. We affirm.

Shortly before 5:00 p.m. on June 3, 1994, appellee Tammy Lynn Honeycutt was driving westbound on the Midland Avenue bridge from Van Buren to Fort Smith. Due to rainy conditions, she

was traveling under the 40 m.p.h. speed limit. She could see with the use of her windshield wipers, which were operating at normal speed. Honeycutt was in the right-hand lane when her car hydroplaned, slid into the left lane, hit the concrete divider on the bridge, and came to a stop. She looked in her rear-view mirror and saw a white car pull up behind her and turn on its flashers. Honeycutt then activated her flashers so that the person behind her would know she wanted to exit her car. She had turned her car off and pulled up the emergency brake when the white car behind her was rear-ended by appellant James H. Young's truck, forcing the white car into hers. It was Honeycutt's testimony that Young apologized to her after the accident, told her that he had not seen her, had not touched the brake, and never slowed down. Young explained to her that he was trying to clear some water off his windshield that had splashed over from the opposite side of the bridge.

Officer David Thomas of the Fort Smith Police Department investigated the accident. Though it was raining on his way to the scene, he stated he had no problem seeing while driving with the aid of his windshield wipers. He testified that the accident occurred 500 feet from the crest of the bridge. According to Thomas, there was nothing obstructing Young's view from the crest of the bridge to the stopped vehicles. Young told Thomas that he had been traveling in the left lane and that water had splashed over the concrete barrier from the other lanes onto his windshield, preventing him from seeing the vehicles stopped in front of him until the collision occurred. However, he told Thomas that he continued at a steady speed and did not see any reason to slow down. While Thomas saw flashers on Honeycutt's vehicle, he did not recall seeing flashers on the white car. Because the rear end of the white car was smashed, Thomas opined that the damage could have caused the flashers not to operate.

Regarding damages, Honeycutt stated that while she was not hurt in any manner from the initial contact she made with the bridge, her head hit the seat-belt latch after the white car was knocked into hers, causing her car to turn completely around. She described an "egg-size" knot on the back of her head, and stated that her neck, back, and left collarbone were also hurting. The same evening of the accident, she went to the hospital, where she underwent x-rays and was given muscle relaxers and pain pills. Three days later, Honeycutt was experiencing pain in both legs, headaches, and

soreness. She was referred an orthopedic surgeon, who diagnosed cervical and thoracic strain. Honeycutt completed approximately three weeks of physical therapy. In her negligence claim against Young, she sought damages for personal injuries, past and future medical expenses, past and future mental anguish, and lost income. She prayed for $30,000, including $5,203.57 in medical expenses and $208.84 for 23 hours of lost wages.

After the trial court denied Young's motion for directed verdict, Young testified that it was raining very hard at the time of the accident, and that he caught the hardest part of the rain on the bridge. He estimated his speed at 30 m.p.h. or slower because of the weather. It was Young's testimony that he got caught in the inside lane because of traffic and could not change lanes. According to Young, he did not see anything or slow down before he hit the white car, and he did not see any emergency flashers on the white car or on Honeycutt's vehicle.

At the close of all the evidence, various AMI instructions were submitted to the jury, including the burden of proof for damages based on negligence, proximate cause, the common law rules of the road, and comparative negligence. The jury returned a unanimous verdict for Young, who appeals from the trial court's granting of Honeycutt's motion for new trial.

■ Young first contends that the trial judge's order granting the new trial is deficient because it does not include a "finding" that the jury's verdict was clearly contrary to the preponderance of the evidence. Before the Uniform Rules for Circuit and Chancery Court were abolished in 1988, *see In Re: Abolishment of the Uniform Rules of Circuit and Chancery Courts*, 294 Ark. 664, 742 S.W.2d 551 (1987), Rule 16 required judges to state, with particularity, the specific reasons for their decision in their order granting the new trial. If they failed to do so, there was a presumption on appeal that the jury's verdict was correct. *See e.g., Stephens v. Saunders*, 293 Ark. 279, 737 S.W.2d 626 (1987); *Brant v. Sorrels*, 293 Ark. 276, 737 S.W.2d 450 (1987). There is no such requirement present in Arkansas Rules of Civil Procedure; thus, Young's argument is without merit.

■■ Young next contends that the trial court abused its discretion in granting a new trial because the jury's verdict was not clearly against the preponderance of the evidence. Rule 59(a)(6) of

the Arkansas Rules of Civil Procedure provides that a new trial may be granted to all or any of the parties on all or part of the issues on the application of the party aggrieved when the verdict or decision is clearly against the preponderance of the evidence. The trial court has limited discretion in the matter, as it may not substitute its view of the evidence for the jury's except when the verdict is clearly against the preponderance of the evidence. *Bristow* v. *Flurry*, 320 Ark. 51, 894 S.W.2d 894 (1995); *Richardson* v. *Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994). However, the trial court may grant a new trial when a miscarriage of justice has occurred. *Brant* v. *Sorrells, supra.* In reviewing the trial court's granting of a motion for new trial, the test is whether the judge abused his or her discretion. *Bristow* v. *Flurry, supra*; *Richardson* v. *Flanery, supra.* We have further described this standard as requiring a showing of "clear" abuse, *see Brant* v. *Sorrells, supra*; *Saber Mfg. Co.* v. *Thompson*, 286 Ark. 150, 689 S.W.2d 567 (1985), or "manifest" abuse by acting improvidently or thoughtlessly without due consideration. *See Dedman* v. *Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987); *Adams* v. *Parker*, 289 Ark. 1, 708 S.W.2d 617 (1986); *Clayton* v. *Wagnon*, 276 Ark. 124, 633 S.W.2d 19 (1982). A showing of abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Bristow* v. *Flurry, supra*; *Richardson* v. *Flanery, supra.*

In *Bristow* v. *Flurry, supra,* defendant Bristow, a cab driver, approached the intersection of Garrison and Ninth Street in Fort Smith when his passenger, plaintiff Flurry, reached over the seat to pay her fare and stated, "Here." Bristow claimed that, when he last looked, the light in the intersection ahead was green, so he turned to collect the money from Flurry. However, when he turned back, he was in the intersection, at which point he saw a truck a moment before colliding with it. Bristow claimed the truck was speeding. The jury returned a verdict in Bristow's favor, but the trial court granted Flurry's motion for new trial. We affirmed, noting that Bristow had conceded he was not paying attention to the road as he entered the intersection prior to the collision.

We likewise affirmed the trial court's granting of a new trial in *Richardson* v. *Flanery, supra.* In that case, defendant Richardson was driving her car on a feed-on lane, attempting to access Highway 107. She failed to yield and collided with the Flanerys's car, which was traveling south on the highway. The jury returned a general

verdict in Richardson's favor, but the trial court granted the Flanerys's motion for new trial. We held that the trial court did not abuse its discretion in granting the new trial because the overwhelming weight of the evidence was that Richardson's failure to yield had been the cause of the accident. In so holding, we recognized that the only evidence tending to disprove the allegations of negligence against Richardson was her own testimony regarding the cause of the accident.

In *Turrise* v. *Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990), we again affirmed the trial court's granting of a new trial. Defendant Turrise was the driver of a van that ran off the road, overturned, and injured the plaintiff passengers. The trial court granted a new trial, finding that Turrise's testimony regarding another vehicle causing him to run off the road was at variance with the physical evidence and the testimony of independent witnesses. In affirming the trial court's decision, we observed that the only evidence tending to excuse Turrise's failure to keep the van on the road was his own sudden emergency testimony, and concluded that the physical evidence showed a course of conduct contrary to that which an ordinary person would have undertaken when confronted with such an emergency.

█ We recognize that in our decision *Bristow* v. *Flurry*, *supra*, we thought it significant that the jury was not instructed on comparative fault. While the jury was so instructed in the present case, we cannot conclude that the trial court abused its discretion in ordering a new trial. By his own testimony, Young admitted he never slowed down or applied his brakes before he hit the white car. This was so even though he "didn't see anything but water." Honeycutt and Thomas offered similar testimony. Particularly, Thomas testified that Young told him that after water splashed on his windshield, he continued at "steady speed." Moreover, there was a distance of approximately 500 feet from the crest of bridge to accident site. According to Thomas, there was nothing obstructing Young's view from the crest of the bridge to the stopped vehicles. Thus, we must conclude that this evidence demonstrated a course of conduct contrary to that which an ordinary person would have undertaken when confronted with such an emergency.

█ The trial court read AMI 901 to the jury, which describes a driver's duty to lookout for other vehicles, to keep his vehicle under control, and to drive at a speed that is reasonable and

prudent under the circumstances. As it is uncontroverted that Young did not decrease his speed when water splashed on his windshield, we cannot agree that the trial court erred in concluding that a new trial was warranted on the basis that the negligence of Honeycutt, if any, was exceeded by the negligence of Young. It was also uncontroverted that Honeycutt sustained a muscle strain and lost nearly a full day of work as a result of the accident. Under these circumstances, recognizing that Young will have the opportunity to prevail at another trial, we hold that the trial court did not abuse its discretion in granting a new trial.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. This court requires that before a trial court may substitute its view of the evidence for that of the jury, the jury's verdict must be *clearly* against the preponderance of the evidence. A.R.C.P. Rule 59(a)(6). To determine whether the trial court abused its discretion, it is helpful to examine the order granting a new trial to determine the rationale for the trial court's substitution of its view for that of twelve jurors. Here, the order reflects only that it was the trial court's opinion that the negligence of Honeycutt, if any, was exceeded by the negligence of Young, and that Honeycutt suffered damage as a result of the automobile accident. Without more explanation, it is impossible to ascertain whether the trial court abused its discretion without properly examining the evidence. In reviewing the evidence and instructions to the jury, I submit the record fails to support the trial court's substituted and conflicting opinion that the jury's verdict was clearly against the preponderance of the evidence. Therefore, I must dissent from the majority's opinion upholding the trial court's ruling granting Honeycutt a new trial.

The majority opinion recites evidence in support of the trial court's finding that Mr. Young was a negligent participant in the present case. This dissent does not contest that there was evidence whereby the judge or jury could have found Young negligent. However, the majority's analysis falls short in its failure to recognize that there was evidence presented in the present case whereby the jury could have concluded that Honeycutt was equally, if not more, negligent than Young.

Evidence of Honeycutt's negligence is found where she admit-

ted that she lost control of her vehicle when she hydroplaned across two lanes of traffic and struck the concrete divider. The majority recites that Honeycutt testified that she was driving under the speed limit, when in fact she testified that she was probably driving under the speed limit because it was raining, but that she did not look at her speedometer and was unsure as to whether she was driving over or under the speed limit, only that she thought she was driving more slowly than she would have been on a normal day. Regardless, it was uncontroverted that Honeycutt hydroplaned into the concrete wall where her car came to rest. From this testimony alone, the jury could have concluded that Honeycutt was negligent pursuant to AMI 901(B) and (C) for having failed to maintain control of her car and driving at an unsafe speed. The judge also gave AMI 305(b), which instructed the jury that it was the duty of both persons involved in the occurrence to use ordinary care for the safety of others and their property. Under this instruction, the jury could also have found Honeycutt negligent when she chose to leave her car stopped on the bridge, as Honeycutt's own testimony included that her car was not rendered immovable by either accident.

This court has reversed trial courts' granting of new trials as an abuse of discretion when the jury had before it evidence of a substantial or independent nature which, if accepted by the jury, could support the verdict and which was at least the equivalent of any countervailing evidence. *See Razorback Cab of Fort Smith, Inc.* v. *Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993); *Turrise* v. *Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990); *Schrader* v. *Bell*, 301 Ark. 38, 781 S.W.2d 466 (1989); *Wilson* v. *Kobera*, 295 Ark. 201, 748 S.W.2d 30 (1988). Such is the instance in the present case. The majority opinion cites cases where this court affirmed the lower court's granting of a new trial, but these cases simply do not reflect the type of evidence required to reverse.

For example, in *Bristow* v. *Flurry*, 320 Ark. 51, 894 S.W.2d 894 (1995), the trial judge, unlike in the present case, gave no comparative fault instruction to the jury. There, the only allegations of another's negligence was Bristow's own testimony. Moreover, Bristow conceded that he was not paying attention to the road as he entered the intersection prior to the collision. In *Richardson* v. *Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994), no independent evidence was presented to show that the defendant Richardson was

not solely at fault. The *Richardson* court said, "We recognized that the only evidence tending to disprove the allegations of negligence against Richardson was her own testimony regarding the cause of the accident." Last, in *Turrise*, 303 Ark. 576, 798 S.W.2d 684, the only evidence tending to excuse Turrise's failure to keep the van on the road was his own testimony of a sudden emergency. Testimony and physical evidence presented showing Turrise was at fault, along with the lack of any independent evidence beyond Turrise's own testimony to show that he was not at fault gave rise to this court's determination that the trial court was found not to have abused its discretion in granting a new trial.

In my view, the cases relied upon by the majority opinion involve proof that is considerably distinguishable from the evidence before the jury in the present case. Here, evidence of a substantial and independent nature was presented to the jury, which it accepted as evidence that Young and Honeycutt were at least equally negligent. For this reason, I would reverse the trial court's decision, since I believe it erred in finding the jury's verdict was clearly against the preponderance of the evidence.