NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
*v.* Elaine BRYSON

CA 97-395 962 S.W.2d 824

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered February 18, 1998

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Jim Tilley* and *Julia L. Busfield*, for appellant.

*Robert S. Blatt*, for appellee.

JOHN MAUZY PITTMAN, Judge. Nationwide Mutual Fire Insurance Company has appealed from an order granting a new trial in appellee Elaine Bryson's action to recover on a fire insurance policy issued by appellant. At trial, appellant defended appellee's claim on the ground that the property had burned as a result of arson caused by appellee or by someone on her behalf. The jury returned a verdict for appellant. The circuit judge set the verdict aside as clearly against the preponderance of the evidence. Because we agree with appellant that the circuit judge abused his discretion, we reverse.

From about November 1994 until February 1996, appellant rented a house she owned in Van Buren to Leslie and Roland Fohren. Appellee had a fire insurance policy with appellant in the amount of $44,000 on the property. The policy excluded any intentional loss arising out of any act committed by or at the direction of appellee with the intent to cause a loss. The policy also did not protect against loss caused by constant water seepage over a period of weeks, months, or years. On February 22, 1996, the Fohrens moved out of the house, after having notified appellee a week or so before that they were leaving. Early the next morning, the house burned. Appellant's investigation of the fire revealed that traces of an accelerant were present in the house and that the burn patterns indicated arson. The investigation also showed that, before the fire, a substantial portion of the flooring had needed to be replaced because of rot caused by water leakage. When appellant denied appellee's claim, appellee sued appellant.

Appellant stipulated that the policy was in full effect at the time of the fire and that the house was a total loss. Appellee did not dispute the overwhelming evidence that the fire had been caused by arson; instead, she contended that there was no evidence linking her to the fire.

Appellant presented extensive evidence that the fire was caused by a flammable liquid placed at floor level, which was ignited. Appellant also proved that, before the fire, the house had needed substantial repairs to the flooring. It also introduced evidence that appellee had knowledge of this extensive water damage and that she was also aware that the fire insurance on the dwelling was still in effect. Appellant also presented evidence that appellee and Kenneth Storment had access to the house immediately prior to the fire.

Appellee especially disputed the evidence introduced by appellant that she had knowledge before the fire of the extent of the damage to the flooring. Appellee testified that, after she knew that the Fohrens were vacating the premises, she made plans to rent the house to another individual. She denied knowing that the floors were in bad shape, although she admitted that she had purchased a new water heater for the house, which Mr. Fohren

had installed in December of 1995 after the Fohrens had notified her that the hot water tank was leaking. She admitted that she had known that the kitchen floor was mushy around the leaking hot water tank but denied knowing how big the problem was. She denied knowing that Mr. Fohren had attempted to brace the floor and stated that the Fohrens had never told her about any other damage to it. She stated that she had not known that it would take between $15,000 and $30,000 to repair the house and denied having made statements to that effect.

Appellee testified that she and Kenneth Storment, who lived with her, were awakened at 2:00 a.m. on February 23, 1996, by a telephone call from her sister, who said that the house was on fire. Appellee stated that, after staying at the scene while the firemen put out the fire, she went home to get the insurance policy to be sure that it was in effect; she knew it was about time for a premium notice to be sent out. She stated that, after she found the policy and saw that it had expired on January 23, 1996, she cried. She denied having received a premium notice. Appellee testified that, on the afternoon of February 23, she asked Ms. Fohren if she had received any premium notices from appellant; Ms. Fohren then brought her an envelope from appellant which contained a notice of cancellation dated February 20 which had been mailed to the rental house. According to this notice, the policy would be canceled at 12:01 a.m. on March 5 for nonpayment of the premium. In response to the question whether the Fohrens, at appellee's request, had left the keys in the house on the afternoon of the 22nd, appellee testified that Ms. Fohren had brought her the keys at the same time she brought the cancellation notice.

Appellee also testified that she is the sole owner of the house and had paid off the mortgage long ago. Appellee said that, at the time of the fire, she was not working; her income consisted of $275 per month from the rental of a mobile home, $400 per month for rental of the house that burned, and $500 per month rent from Mr. Storment. Explaining their relationship, appellee stated that, although Mr. Storment is a married man, he has rented a room from her for almost twenty years. She stated that, if she had known that the house had needed such extensive repairs, she would have had to take out a mortgage on the house to pay for

them. Appellee testified further that, at her request, Mr. Storment had gone to the house on the afternoon of February 22 to see if the Fohrens had completed the move.

Kenneth Storment testified that he went by the house the afternoon before it burned because appellee had asked him to see if the renters had moved out. He stated that, when he arrived there, the garage door was up and the front door was unlocked; no one answered his call, knock, or doorbell ring. When no one answered him, he said, he opened the screen door and walked through the house and the garage. No one was in the house, he stated, although there were some items remaining in the garage. He testified that he had picked up a new hot water tank for the house but did not know that the flooring was seriously damaged. He stated that he did not have a key to the house.

Reverend Claude Blount, who lives next door to the house that burned, testified that he noticed that the house was on fire at about 1:00 in the morning. He testified that he did not know that the Fohrens had moved and was concerned that they might be inside the house. He stated that, when he attempted to alert the Fohrens, he noticed that the front door was closed, none of the windows were open, and the garage door was down.

Appellee asserted that, at the time of the fire, she did not even know if she had insurance on the house. Richard Russell Organ, an insurance agent for appellant, testified that appellee had requested that all insurance information continue to be sent to the house that burned. He stated that, although the original policy period was from January 23, 1995, to January 23, 1996, appellant had extended the policy because it erroneously had sent return envelopes with the wrong lockbox number to policy holders in this geographical area; therefore, a lot of payments were sent to the wrong address. He stated that, when appellant became aware of the error, all policy holders in this geographical area were given an extension of their coverage, regardless of whether their money had been received, until a date in March; this notice was prepared on February 20, 1996.

Leslie Fohren testified that she had realized there was a water leak problem when one end of their couch started falling through

the floor. She stated that she had brought this to appellee's attention and had called her several times to inform her that they heard water running. According to Ms. Fohren, appellee and Mr. Storment told the Fohrens how to cut a hole in the floor and to repair the sub-floor. She stated that her husband had done this work. She was clear that appellee and Mr. Storment had come to the house and viewed the damage to the floor and, in fact, had brought tools over to assist in the repairs. Ms. Fohren stated that the new water heater also leaked. According to Ms. Fohren, when they started moving out, appellee came over and took another look at the floor in the front room; when appellee saw that the new water heater was also leaking, she got mad "and said that didn't [Mr. Fohren] know how to do anything right, and she didn't know anyone so stupid, and that he'd better not ever come back over on her property, and that she was going to drive up and down the road every fifteen to twenty minutes, and if he's out there, she's going to stop and shoot him." In response to the question whether appellee said anything about how much it would cost to fix the house, Ms. Fohren replied: "Yes, she said it was around twenty to thirty thousand dollars to repair it." With regard to the keys, Ms. Fohren stated that, when she had taken some keys to appellee, appellee had instructed her to leave the duplicate keys in the possession of her husband and children on the kitchen counter and to leave the door unlocked. Therefore, she stated, on the afternoon of February 22, the keys were at the house and the door was unlocked. She denied giving the keys to appellee on the day after the fire.

Regarding appellee's notice of the policy's cancellation on March 5, Ms. Fohren testified that she had brought the notice of cancellation to appellee the day after the fire and that she had also given appellee some correspondence from appellant a month or two before that.

Roland Fohren affirmed that he had installed the new water heater that appellee and Mr. Storment had brought over and that he had attempted to repair the floor and sub-floor. He stated that he cut away some rotted flooring in the living room on the other side of the wall by the water heater; the floor joists, however, were rotten so far back that he could not properly replace them. The

only thing he could do, he said, was to put a patch over the floor. He stated that there were gaps between the floor and the walls in the kitchen and the living room. He also testified that appellee and Mr. Storment had brought tools over and that appellee had seen the hole he had cut in the floor.

Joe Free, a fire and water restoration contractor, testified that he had prepared an estimate of $14,313.94 in repairs that would have been necessary to repair only the preexisting water damage.

At the conclusion of the trial, the jury returned a verdict in favor of appellant. After judgment on the verdict was entered, appellee moved for a new trial pursuant to Ark. R. Civ. P. 59(a)(6). In her accompanying brief, appellee did not deny that the house had burned by the use of accelerants or that the fire was not accidental. Appellee simply argued that there was no evidence in the record that she, or someone at her direction, had burned the house. The circuit judge agreed and, in his order granting a new trial, stated:

> 2. The [appellant], insuror, proved by a preponderance of the evidence that the fire that burned the [appellee], insured's, house was intentionally set by someone, or was arson and was of an incendiary nature by use of an accelerant. In fact, the evidence of an intentionally set fire to burn the house was overwhelming.
> 3. The [appellant], insuror, has failed to prove by a preponderance of the circumstantial or direct evidence that the [appellee], insured, set fire or caused the house to be burned. The only credible evidence linking the [appellee] to the fire was that she was the only person to have a financial interest in the burned rent house and would be the only person to benefit or suffer damages if the house burned. This is not enough direct or circumstantial evidence to prove this element.

 Appellant argues on appeal that the circuit judge abused his discretion in setting aside the jury verdict and in granting appellee's motion for new trial. Rule 59(a)(6) of the Arkansas Rules of Civil Procedure provides that a new trial may be granted to all or any of the parties on all or part of the issues on the application of the party aggrieved when the verdict or decision is clearly against the preponderance of the evidence. While the trial

court has some discretion in setting aside a jury verdict, there is no longer the broad discretion that the supreme court formerly recognized. *Ray v. Green*, 310 Ark. 571, 839 S.W.2d 515 (1992). The trial court has limited discretion in the matter, as it may not substitute its view of the evidence for the jury's except when the verdict is clearly against the preponderance of the evidence. *Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996); *see Collins v. Treadwell*, 54 Ark. App. 100, 923 S.W.2d 882 (1996). The test this court applies in reviewing the trial court's granting of a motion for new trial is whether the judge abused his discretion; a showing of abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Young v. Honeycutt, supra; Richardson v. Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994). The supreme court has described this standard as requiring a showing of "clear" or "manifest" abuse of discretion by acting improvidently or thoughtlessly without due consideration. *See Young v. Honeycutt, supra; Razorback Cab of Fort Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993).

Appellant admits that a mere showing of arson does not automatically relieve the insurer from liability under a fire policy excluding loss caused by the insured but points out that the insurer may prove that the insured set the fire or caused the house to be burned by circumstantial evidence. Citing *Haynes v. Farm Bureau Mutual Insurance Co. of Arkansas, Inc.*, 11 Ark. App. 289, 669 S.W.2d 511 (1984), appellant contends that the appellate courts of Arkansas have declared that circumstantial evidence that is sufficient to warrant a jury in drawing a reasonable inference that the insured was the author of a fire is sufficient to sustain a verdict in favor of the insurer. In that case, we affirmed the circuit court's refusal to grant a judgment notwithstanding the verdict. Margie Haynes and Clayton Haynes were divorced in 1979 and, by the terms of their court-approved property settlement agreement, Clayton was obligated to convey his interest in their former residence to Margie free of a $90,000 mortgage indebtedness. After he failed to do so, contempt proceedings were initiated. In July of 1981, the dwelling was totally destroyed in a fire that all parties conceded was of incendiary origin. Farm Bureau, which had in

force a fire insurance policy in Clayton Haynes's name in the amount of $103,000, denied liability on the ground that the fire was the result of Clayton's unlawful acts either in setting the fire or causing it to be set. The jury found that the fire loss had resulted from Clayton's unlawful acts.

■■ The Hayneses appealed from the judgment entered in favor of Farm Bureau and argued that the trial court erred in denying their motion for judgment notwithstanding the verdict. We stated:

> There are ordinarily no eye witnesses to an act of arson because the deliberate burning of an insured building by its owner is usually accomplished alone and in secret. Any material fact in issue, however, may be established by circumstantial evidence even though the testimony of other witnesses may be undisputed. The fact that evidence is circumstantial does not render it insubstantial as our law makes no distinction between direct evidence of a fact and circumstances from which it might be inferred. The circumstances may be such that different minds can reasonably draw different conclusions from them without resort to speculation. Where there are facts and circumstances in evidence from which reasonable minds might reach different conclusions without resort to speculation the matter is an issue of fact which must be submitted to the jury for its determination. *Farmers Ins. Exchange v. Staples*, 8 Ark. App. 224, 650 S.W.2d 244 (1983).
>
> We agree that a mere showing of arson does not automatically relieve the insurer from liability under a fire policy excluding loss caused by the insured. It is also necessary to prove by direct or circumstantial evidence that the insured set the fire or caused the house to be burned. Our court on many occasions has declared that circumstantial evidence which is sufficient to warrant a jury in drawing a reasonable inference that the insured was the author of a fire is sufficient to sustain a verdict in favor of the insurer. *Rankin v. Nat'l Lib. Ins. Co. of America*, 188 Ark. 195, 65 S.W.2d 17 (1933).

11 Ark. App. at 292, 669 S.W.2d at 513.

We then reviewed the evidence demonstrating Clayton's motive for burning the house:

In 1979 Clayton Haynes had obligated himself in a property set-tlement approved and enforced by the chancery court to convey this dwelling to Margie free of the $90,000 mortgage by January 1, 1980. He failed to discharge the indebtedness by that date or to convey the property to her. It was shown that he did not have sufficient cash to liquidate the mortgage as he was then having "cash flow problems." Contempt proceedings were instituted against him but an agreed extension of time until August 1, 1981 was set for his compliance.

Under the terms of the divorce settlement Clayton was obli-gated to maintain insurance on the premises. Six or seven months before the fire he directed the insurance agent to issue the policy in his name only. This coverage was cancelled on or about the 1st of July, 1981, and from that date until the night before the fire on July 21st there was no insurance coverage on the house. Although Clayton denied that he had knowledge of this cancellation, there was testimony from an employee of the insurance agency that Clayton was previously aware of the can-cellation and came to her house on July 20th, the night before the fire, to give her a check in order to reinstate the policy. At the time of the fire Clayton had had only nine days remaining in which to liquidate a $90,000 mortgage on the house and he did not have the money to accomplish it because he had "cash flow problems." There was outstanding a court order for him to appear and show cause why he had not done so. A jury could easily infer that he had a motive for the burning of the house and there is nothing in the record to disclose that anyone else did. *Westchester Fire Ins. Co. v. Tidwell*, 199 Ark. 621, 135 S.W.2d 842 (1940).

11 Ark. App. at 292-93, 669 S.W.2d at 514.

We also discussed Clayton's opportunity to burn the house:

It was also established that the fire was first observed around 11:00 p.m. on June 21st. Haynes admitted that he had been at the house during the day to leave Margie's car there but had left before noon and had not returned. He stated that he had gone from there to attend a wedding in Texas. There was evidence that although Clayton went to Texas he had told people that he was going to Florida because he didn't want Margie to know where he was. At the time of the fire, although Margie was in possession of the house, Clayton had a key and had complete access to the house and went there frequently. Margie was

attending school in Bastrop, Louisiana, and staying with her friends there during the week and their daughter was away at school in another state, leaving the house empty. Although Clayton offered evidence tending to prove that he was not in the State of Arkansas at the time the fire was first discovered, the jury was not required to accept that evidence if it did not find it credible. There were a number of things in the testimony about Clayton's trip to Texas which might have easily caused the jury to question the complete veracity or purpose of this testimony. Our court has recognized that a trier of fact may know that an arsonist need not necessarily be personally present at the time the flash of the fire is observed because there are methods by which one can time the origin of an incendiary fire. *Garmon v. The Home Ins. Co. of New York*, 197 Ark. 1102, 126 S.W.2d 621 (1939).

11 Ark. App. at 293–94, 669 S.W.2d at 514.

■ As we stated in *Farmers Insurance Exchange v. Staples*, 8 Ark. App. 224, 650 S.W.2d 244 (1983), in a case such as this, where the deliberate burning of an insured building is in issue, any evidence tending to show a motive or opportunity is admissible, and any material fact in issue may be established by circumstantial evidence from which it can be inferred. *Accord Thomas v. Allstate Ins. Co.*, 27 Ark. App. 27, 766 S.W.2d 31 (1989).

■ In our view, the case before us is analogous to *Haynes v. Farm Bureau*. It is true that, in *Haynes*, the trial judge did not grant the judgment notwithstanding the verdict; here, the trial judge set the verdict aside and granted appellee a new trial. We are cognizant that on appellate review in a case such as this, we only reverse if the trial judge abused his discretion. Nevertheless, the evidence that the jury heard in *Haynes* was no less compelling than that before the jury in this case. According to appellee's own testimony, appellee did not worry that she had no insurance coverage on the house until after the fire, when she looked at the policy. The jury obviously believed the testimony of Mr. and Mrs. Fohren as to appellee's knowledge of the nature and extent of the water damage to the house's floors. Additionally, it is not disputed that Mr. Storment, who has lived with appellee for approximately twenty years, was in the house on the afternoon of the 22nd or that, at the time of the fire, the tenants had moved out. Although appellee testified that she had made plans to rent

the property to another individual, the jury was not required to believe her. *See Myers v. Hobbs*, 195 Ark. 1026, 115 S.W.2d 880 (1938). It is our opinion that, on this record, the jury could find without clear error that appellee had a motive and an opportunity to burn the house; given the high cost of repairs that would have been necessary to fix the damaged floors, and appellee's lack of financial resources, we believe that the jury could likewise infer that appellee, or someone at her direction, intentionally set the fire. We therefore believe that the trial judge abused his discretion in setting aside the verdict for appellant and setting the case for a new trial.

Reversed.

AREY, STROUD, and MEADS, JJ., agree.

NEAL and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I do not agree that the trial court's grant of a new trial was a "clear" or "manifest" abuse of discretion, *see Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996), so as to require a reversal of this case.

For reversal, the majority relies primarily upon *Haynes v. Farm Bureau*, 11 Ark. App. 289, 669 S.W.2d 511 (1984), in which this court affirmed the trial court's refusal to grant a judgment notwithstanding the verdict in an arson case. The majority finds the evidence before the jury in *Haynes* "no less compelling" than in Bryson's case; I must strongly disagree. Haynes had only nine days to liquidate a $90,000 debt in order to comply with a court order to convey his former residence to his ex-wife free of mortgage indebtedness. He lacked the ability to do so, and faced contempt proceedings for his failure. On the night before the fire, he had gone to his insurance agent's home and reinstated insurance coverage on the house in his name only. Repairing or even selling the house was thus not an option available to Haynes. Here, Mrs. Bryson owned a house free of indebtedness that needed repairs to the floor, repairs already commenced by her tenants. While Mrs. Bryson perhaps faced some financial pressure, unlike the majority, I cannot accept that her low-income status so readily translated into a propensity to commit a serious felony.

In *Thomas v. Allstate Ins. Co.*, 27 Ark. App. 27, 766 S.W.2d 31 (1989), another case cited by the majority, this court affirmed a jury verdict in favor of the insurance company where the house was vacant, was insured for more than double the purchase price paid by the appellant when he bought it only one year prior to the fire, the insurance company had denied the appellant's request to further increase the amount of coverage, the tenants had moved out a day or two before the fire at appellant's request, and appellant had serious financial difficulties including an I.R.S. lien.

I agree with the general principles expressed in our cases involving arson of an insured building, as stated in the majority opinion. It is correct that, where an insured building is deliberately burned, any evidence "tending to show motive or opportunity" is admissible. *Thomas v. Allstate Ins. Co., supra, Farmer's Insurance Exchange v. Staples*, 8 Ark. App. 224, 650 S.W.2d 244 (1983). However, admissibility should not be equated with sufficiency, and it is the sufficiency of the evidence of motive, not its admissibility, that is at issue here.

It is also well settled that a jury may infer from circumstantial evidence that the insured set or caused a fire to be set. *See Haynes v. Farm Bureau, supra.* However, the inference must be reasonable. On this issue I agree with the trial court — the jury could not reasonably infer that Bryson caused the fire without resorting to speculation and conjecture.

Clearly, the evidence of Mrs. Bryson's "motive" is far less "compelling" than the evidence before the jury in *Haynes*, and pales in comparison to that in *Thomas*. The majority has, perhaps inadvertently, lowered the threshold in future cases such as Bryson's by reversing this case. Instead of strong, compelling financial incentives coupled with affirmative and questionable actions by the insured, henceforth, economic status alone will be sufficient evidence of a property owner's motive. This is unfortunate, because an insured property owner will almost always have a "motive" in the form of potential for financial gain when arson occurs, and will likewise always have the opportunity to set a fire or cause it to be set. Rental houses are often in need of repairs. High-income and well-to-do property owners will not be affected

by the majority's decision to reverse this case. There will be no "motive" provided by their income status, and their claims will continue to be promptly paid. However, low- and even moderate-income property owners, particularly owners of rental property, may well be branded as arsonists by their insurance companies for simply owning a home that needs modest repairs.

I respectfully dissent.

NEAL, J., joins.