DIAMOND STATE TOWING COMPANY, Inc., and James Ingram *v.* Lindel Kay CASH

95-1282                                             919 S.W.2d 510

Supreme Court of Arkansas
Opinion delivered April 22, 1996

*Wood, Smith, Schnipper & Clay*, by: *Lynn Williams*, for appellants.

*Harrell & Lindsey, P.A.*, by: *Searcy W. Harrell, Jr.*, and *Phillip J. Foster*, for appellee.

ANDREE LAYTON ROAF, Justice. This case arises from an automobile collision. Appellee Lindel Kay Cash filed an action for personal injury against the appellants, Diamond State Towing Company, Inc. (Diamond State Towing), and James Ingram. A jury returned a verdict in favor of Diamond State Towing and Ingram. Subsequently, Cash filed a motion for new trial pursuant to ARCP Rule 59(a)(6), asserting that the verdict was clearly contrary to the preponderance of the evidence; the trial court granted the motion. The sole issue on appeal is whether the trial court abused its discretion in granting a new trial. We affirm.

At approximately 4:30 a.m. on June 24, 1989, Lindel Cash was traveling east on Interstate 30 east of Texarkana. Ms. Cash testified that she could see something in the road as she approached an overpass; she was in the left lane. Subsequently, she recognized that there was an accident and stopped her car. Ms. Cash testified that she was sitting with her foot on the brake when one of her passengers, Floyd Waites, yelled, "[H]e's going to hit us." Ms. Cash looked in the rear-view mirror and saw lights. James Ingram, a shareholder in Diamond State Towing, was driving a 1966 Hendrixson heavy-duty wrecker. Mr. Ingram's vehicle struck the rear of Ms. Cash's vehicle.

Ingram testified that he was returning to Hope, Arkansas, from Nash, Texas, where he had spent four or five hours pulling a truck and trailer out of a ditch. He testified that he was not sleepy, had not been drinking any alcohol, and had taken no drugs other than his blood pressure medication. Ingram stated that he saw the headlights flash from the first accident, thought it might have been a lightning flash, and did not "hit the brakes or let off the accelerator"; he kept going, then he saw taillights. Ingram testified that he "did not think much, then I got closer and noticed the taillights

were not moving." When he realized that Cash's car was stopped, Ingram slammed on his brakes. Ingram also testified that he was traveling fifty miles per hour, which he thought was a reasonable speed.

Ingram stated that there was a barricade on the left and a van stopped on the right. He testified that he was not tailgating the Cash vehicle and the first time he saw her was when he "came on her." In addition, Ingram stated that he saw Cash's taillights, but he did not see any hazard lights, signal lights, or brake lights. Ingram further testified that no one else hit anyone, but the driver of the eighteen wheel truck behind Ingram stated "it was a miracle he got it stopped" without hitting Ingram.

Corporal Robert Lavender of the Arkansas State Police testified that a one-car accident occurred at the apex of the overpass. He stated that the vehicle swerved and hit the concrete wall; the left lane of the interstate was completely blocked and part of the outside lane was blocked. Corporal Lavender testified that the accident involving Ms. Cash occurred within 100 yards of the single vehicle accident. Lavender stated that there was aluminum railing on the shoulder of the highway and there was not enough room for Ingram to pass on the right of Ms. Cash's vehicle. Lavender testified that "failed to yield" was marked on the accident report, but he meant following too closely. In addition, Lavender testified that there was a 282-foot skid mark from the left front of the wrecker; he did not find any skid marks which led from Ms. Cash's vehicle. Finally, Lavender stated that it was not normal for a car to come to a complete stop on the interstate.

Floyd Waites, Ms. Cash's son-in-law, testified that Ms. Cash took a quarter- to a half-mile to brake easily, and she stopped without skidding or losing control. He testified that Ingram's wrecker struck the Cash vehicle approximately 15 to 20 seconds later.

The jury returned a verdict in favor of the defendants; however, the trial court concluded the verdict was against the clear preponderance of the evidence and granted a new trial. In making its ruling, the trial court observed that the key testimony was that of Mr. Ingram. Ingram stated the first thing that he saw was "white lights" flashing; he thought it was when the first car hit the bridge. Ingram testified that "I got a glimpse of something up there, you

know, a flash and I figured that's what it was." Ingram stated that he did not slow down; he testified that he "kept going and then I seen some taillights and I didn't think nothing much of it right then and then as I got closer I noticed the taillights wasn't moving."

The trial court found that Ingram could not take evasive action to the right because of another vehicle nor could he take evasive action to the left because of the barricade. However, the trial judge also recognized that Ms. Cash was confined to the lane in which she had stopped. The trial court concluded the issue was whether Ingram was negligent in not recognizing the danger earlier. The trial court stated that Ingram was put on notice by the flash of lights, which he thought were from an accident, but he did not slow down. Further, the trial court concluded Ingram's inability to keep a proper lookout may have been affected by his long workday without any sleep. The trial judge also found Ms. Cash was not negligent. He stated that Ms. Cash's failure to activate her hazard lights was of little consequence; Ms. Cash's brake lights would have been clearly visible to following traffic.

■■ Appellants, Diamond State Towing and James Ingram, bring this appeal from the trial court's order granting Cash's motion for a new trial. Arkansas Rule of Civil Procedure 59(a)(6) provides that a new trial may be granted to all or any of the parties on all or part of the issues on the application of the party aggrieved when the verdict or decision is clearly against the preponderance of the evidence or is contrary to the law. *Bristow* v. *Flurry*, 320 Ark. 51, 894 S.W.2d 894 (1995). Although the trial court is granted some discretion in the matter, that discretion is limited, and the trial court may not substitute its view of the evidence for the jury's except when the verdict is clearly against the preponderance of the evidence. *Id.*; *Richardson* v. *Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994). The test we apply in reviewing the trial court's granting of the motion is whether the trial court abused its discretion. *Bristow, supra.* A showing of abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.*

On appeal, the appellants cite three cases in which this Court has found an abuse of discretion where a trial court granted a new trial, *Razorback Cab of Ft. Smith, Inc.* v. *Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993), *Schrader* v. *Bell*, 301 Ark. 38, 781 S.W.2d 466, (1989), *Wilson* v. *Kobera*, 295 Ark. 201, 748 S.W.2d 30 (1988), and

three cases in which this Court has upheld the trial court's decision granting a new trial, *Bristow* v. *Flurry*, 320 Ark. 51, 894 S.W.2d 894 (1995), *Richardson* v. *Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994), *Turrise* v. *Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990). In addition, the appellants note that the jury was instructed in accordance with AMI Civil 3rd, 2102 (1989)(comparative negligence), AMI Civil 3rd, 603 (1989)(occurrence of accident is not, of itself, evidence of negligence), AMI Civil 3rd, 614 (1989)(sudden emergency), and AMI Civil 3rd, 902 (1989)(superior right of forward vehicle does not relieve driver of forward vehicle of the duty to use ordinary care). The appellants submit that in considering the facts in the record and the jury instructions, it is apparent that the trial court abused its discretion and entered into the province of the jury. The appellants, however, do not contest that Ms. Cash sustained an injury; they simply appeal the trial court's decision regarding the issue of negligence.

The appellants first submit that the trial court invaded the province of the jury regarding whether Ingram should have perceived the danger of the first accident. The appellants submit Ingram saw a swirl of light that he initially believed to be lightening; therefore, there was no danger for him to perceive. Second, the appellants contend that the trial court invaded the province of the jury on the issue of keeping a proper lookout. On this point, the appellants submit there was no evidence that Ingram was fatigued. Next, the appellants contend that the trial court invaded the province of the jury in concluding that Cash's negligence did not equal or exceed the negligence of Ingram. The appellants submit that Ingram specifically stated he saw taillights, but not brake lights, and it is for the jury to determine the credibility of the witnesses. Finally, the appellants submit the trial court ignored the fact that the sudden emergency instruction was given and it was for the jury to decide whether Cash should have activated her hazard lights.

In the instant case, the jury was instructed regarding the duty to keep a proper lookout that a reasonably careful driver would keep under circumstances similar to those shown by the evidence, the duty to keep a vehicle under control, and the duty to drive at a speed no greater than is reasonable and prudent under the circumstances. *See* AMI Civil 3rd, 901 (1989). Ingram admits he was traveling fifty miles per hour and his wrecker struck the rear of Ms. Cash's vehicle. By his own testimony, Ingram saw the headlights

from the first accident, but he did not do anything; he kept going, then he saw taillights.

The appellants find it significant that Ingram never saw Ms. Cash's brake lights and that cars are not normally stopped on the interstate. Ingram, however, testified that he saw the lights from the first accident and Ms. Cash's taillights; he just did not realize the taillights were not moving. In addition, the driver of the truck behind Mr. Ingram was able to stop, and no other accidents occurred.

In *Bristow v. Flurry*, 320 Ark. 51, 894 S.W.2d 894 (1995), we upheld the trial court's granting of a motion for new trial where the defendant, by his own testimony, conceded he was not paying attention to the road as he entered the intersection prior to the collision. We noted that the only significant testimony favoring the defendants came as a result of the testimony of one of the defendants. Similarly, in the instant case, Ingram testified he saw the headlights from the first accident but he did not take any precautionary measures.

In *Richardson v. Flanery*, 316 Ark. 310, 871 S.W.2d 589 (1994), Richardson was traveling in a feed-on lane to the highway and the Flanerys were traveling on the highway. According to her testimony, Ms. Richardson looked, but when she did not see anyone on the highway, she proceeded forward. Ms. Richardson's car collided with the car driven by Mr. Flanery. The Flanerys filed an action against Ms. Richardson, but the jury returned a verdict in favor of Ms. Richardson. We held that the trial court did not abuse its discretion in granting the Flanerys's motion for new trial because the overwhelming weight of evidence was that Ms. Richardson had negligently caused the accident. We noted that it was unrefuted that the Flanerys had the right-of-way when the accident occurred. Similarly, it is undisputed that Ms. Cash had the superior right as the forward vehicle.

In *Turrise v. Crane*, 303 Ark. 576, 798 S.W.2d 684 (1990), this Court also upheld a trial court's granting of a new trial. Mr. Turrise was the driver of a van that was involved in a one-vehicle accident. The passengers filed an action against Mr. Turrise; the jury returned a verdict in favor of the defendant. Mr. Turrise testified that a blue car shot out in front of him which caused him to drive off the road. In affirming the granting of a new trial, this Court noted that the

only evidence tending to excuse Turrise's failure to keep the van on the road was his sudden emergency testimony. This Court also noted that the physical evidence showed a course of conduct contrary to that which an ordinary person would have undertaken when confronted with such an emergency. In the instant case, the physical evidence also shows a course of conduct contrary to that which an ordinary person would have undertaken when confronted with such an emergency. Ingram admits that he did not take any action after observing the lights from the initial accident.

■ Granted, the jury was instructed that a person who is suddenly and unexpectedly confronted with danger is required to use only the care that a reasonably careful person would use in the same situation. *See* AMI Civil 3rd, 614 (1989). Further, the jury was instructed on comparative fault. *See* AMI Civil 3rd, 2102 (1989). However, Ingram admitted he saw the headlights from the first accident and took no action. He further admitted that he saw Ms. Cash's taillights, but he did not realize they were not moving. Under these circumstances, we cannot say that the trial court abused its discretion in granting a new trial on the basis that Ingram failed to keep a proper lookout and that Ms. Cash's negligence, if any, did not equal or exceed that of Ingram.

Affirmed.

GLAZE and DUDLEY, JJ., dissent.

TOM GLAZE, Justice, dissenting. Once again, this court has affirmed the lower court's substitution of its opinion for that of the jury. The jury's verdict was clearly supported by substantial evidence, and cannot be said to be against the clear preponderance of the evidence.

Here, the trial court granted a new trial, finding that the plaintiff, Cash, was not negligent. However, Cash's witness testified that Cash was at a standstill on the interstate for as long as twenty (20) seconds without her engaging her emergency flasher. By Cash's own admission, she never took any evasive action nor did she look behind her to observe the possibility of any oncoming traffic. Defendant Ingram testified that he only saw Cash's taillights, an indication that Cash failed the most minimum task of warning others by depressing her brake pedal. Clearly, evidence was introduced to the jury from which a reasonable inference of Cash's negligence could have been derived.

Evidence was also introduced to the jury that Ingram was not negligent. It was dark and early in the morning at the time of the collision. Ingram testified that when he saw a flash of light ahead, he thought it was lightning. In retrospect, the lights he saw were the headlights flashing from the first accident. Seeing only taillights of a car ahead and witnessing no accident, Ingram believed he had no reason to apply his brakes. Once Ingram determined the taillights (of Cash's car) were stationary, he applied his brakes on his tow truck, skidding 282 feet. Ingram testified he was on I-30 driving fifty miles per hour. From this evidence, the jury reasonably concluded that Ingram had kept a proper lookout and was not negligent in applying his brakes at the time he first became aware that Cash's car was stopped on the overpass and Ingram was unable to pass to the left because of a guardrail or to the right because of traffic.

Clearly, among all the evidence introduced, the jury considered both evidence of Cash's negligence and of Ingram's lack of negligence. In light of the comparative fault instruction given, the jury could have reasonably concluded that Cash was equally, if not more, negligent than Ingram.

Nonetheless, the trial court expressed an opinion that Ingram's "inability to maintain a proper lookout may have been affected by his long workday without a nap which caused him to be tired." The court's opinion exemplifies its abuse of discretion in donning the hat of the factfinder and substituting its opinion for that of the jury. In my view, the trial court erred by substituting its opinion for that of the jury and finding that the verdict was clearly against the preponderance of the evidence. Cf. Young v. Honeycutt, 324 Ark. 120, 919 S.W.2d 216 (1996) (Glaze, J., dissenting); Turrise v. State, 303 Ark. 576, 798 S.W.2d 684 (1990) (Dudley, Glaze, and Turner, JJ., dissenting).

For the foregoing reasons, I respectfully dissent.

DUDLEY, J., joins this dissent.