Cite as 2024 Ark. App. 452

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-225

| | | |
|---|---|---|
| TAMARA SAVAGE | | **Opinion Delivered** September 25, 2024 |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT |
| V. | | [NO. 35CV-19-275] |
| SMS TRUCKING, INC. | | HONORABLE ALEX V. GUYNN, |
| | APPELLEE | JUDGE |
| | | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Tamara Savage appeals the grant of summary judgment in favor of appellee, SMS Trucking, Inc. On appeal, appellant asserts that the circuit court erred in (1) granting summary judgment based on the appellant's failure to identify an expert witness, (2) denying the appellant's claim for loss of earning capacity, (3) its evidentiary ruling that punitive damages were not admissible, and (4) denying appellant's motion for leave to supplement response to motion for summary judgment. We affirm in part and reverse and remand in part.

## I. *Facts*

On May 2, 2019, Savage, an employee of the Mondi Bags facility in Pine Bluff, filed a personal injury lawsuit alleging that on February 2, 2018, she was operating a forklift at the

facility when she suffered injuries as the result of the negligence of James Kirkland, an employee of SMS. Three safety restraints were used to keep the truck driver from moving his truck to prevent injury to the forklift operator. Savage alleges Kirkland removed the two remaining safety restraints himself without her permission or knowledge. Savage alleged she explained to Kirkland about the locks and specifically cautioned him not to remove the restraints and or locks. Savage stated in her answers to interrogatories that she was almost done unloading and was coming back from the secondary fiber and that she saw Kirkland was "messing" with the control box for the dock board. He stated to her that he was trying to raise the dock plate. She alleges she told him not to mess with the control box. Savage said she told Kirkland that was her job, and once she finished, she would unlock everything and remove the chocks from his tires. When Savage returned, she did not see Kirkland, so she backed her forklift up on the dock plate to push paper for the last time. Savage alleged that it was during this final push with her forklift that Kirkland pulled the trailer forward, causing her forklift to fall out of the truck, causing her injuries. SMS has denied liability for the accident by its driver, James Kirkland.

After being extracted from the forklift, Savage immediately sought medical treatment at Jefferson Regional Medical Center and was treated by Dr. Lester Alexander. Savage was subsequently seen by doctors at Arkansas Specialty Orthopedics on April 4, 2018, complaining of pain to her left shoulder and neck area. An MRI was conducted on August 13, 2018, at Arkansas Specialty Orthopedics. SMS was subsequently provided with the

medical records and medical expenses from the emergency-room visit and from her examinations at Arkansas Specialty Orthopedics.

In her complaint, Savage alleges Kirkland removed some of the safety restraints himself after Debbie Reyes had removed the glad hand lock. Without notice to her, Kirkland pulled away from the dock, causing her and the forklift to fall off out of the truck to the concrete floor of the dock. Savage alleges that Kirkland was acting within the scope of his actual or apparent authority granted to him by SMS and that SMS was responsible for his acts in accordance with the doctrine of respondeat superior. Savage alleged that SMS's negligence was the result of Kirkland's failure to adhere to known rules, industry practices, and protocols that would have protected her; failing to ensure that the unloading/cleaning process was complete before moving the truck; failing to warn her before removing the safety restraints; and failing to exercise ordinary care under the circumstances. Savage alleges that Kirkland breached the duty of ordinary care by moving the truck without notification to her, and as a result of this breach in duty, she suffered injuries to her left side, mental and emotional distress, and pain, and she incurred medical bills now and will continue to incur medical bills in the future. Kirkland denies that he removed the safety locks as alleged by Savage. Savage alleges that she's permanently impaired, had lost wages, and lost earning capacity and should be awarded punitive damages.

On September 30, 2021, Savage's attorneys submitted plaintiff's witness lists. The witness list included nine witnesses, including "Lester Alexander, MD." The witness list did not differentiate whether the nine witnesses were fact witnesses or expert witnesses. On

3

October 21, SMS filed a motion for scheduling order. In the motion, SMS alleged that it had issued written discovery over two years ago and that it had asked Savage to supplement her prior discovery responses. Included in this motion was the request by SMS for Savage "to disclose all of their witnesses, expert or lay, that they intend to call at trial no later than Friday, October 15, 2021." Savage's attorneys opposed the motion for scheduling order. A scheduling order was subsequently entered on October 13, 2021, which included that "[a]ll discovery should be completed by October 21, 2021" and that all witnesses "including expert or lay witnesses . . . be exchanged [by October 29, 2021.]

On October 18, SMS moved to compel discovery. SMS argued that it had submitted interrogatories to Savage on June 17, 2019, and that two years had passed, and Savage had not supplemented her responses. Specifically, SMS noted interrogatory No. 11 requested the identity of any expert witness she intended to call at trial and request for production of documents No. 3 requested the CV of any said expert witness. Savage responded in 2019 that discovery had just begun, and she did not know whether she would call an expert witness but reserved the right to supplement her response.

The motion to compel stated that SMS attorneys had written the obligatory "good faith" letter to Savage's attorneys in compliance with Arkansas Rule of Civil Procedure 37. The motion also provided Savage's response to the good-faith letter. In pertinent part, Savage's attorney stated: "Lester Alexander, MD, is a physician that will testify about my client's treatment and any current, or future, need for medical care, consistent with the

4

medical records. If there is an impairment, I expect Dr. Alexander will testify on this issue as well."

On October 28, 2021, SMS filed a motion in limine wherein it argued, inter alia, that "[s]pecifically, plaintiff never responded to defendant's interrogatory 11 or related requests for production 3, 4 or 5 which deal specifically with expert witnesses . . . specifically to supplement them with any medical expert witnesses she intends to call – has not identified any expert medical witness in any way. . . ." SMS asked that Savage be "forbidden to offer any expert medical testimony regarding the causal connection between the accident which occurred on 2/2/2028, and any injuries, or any treatments which she obtained after that"; and further, that Savage be forbidden to offer "expert testimony to establish the existence of an impairment rating . . ." and forbidden to offer "expert testimony of any kind to connect the accident . . . to any claimed past or future loss of income, any loss of earning capacity or any future medical needs or expenses." In response to the motion in limine, Savage stated that "Dr. Alexander is not an expert by means of Rule 26. . . . Dr. Alexander's testimony is that of a treating physician . . . ."

A few days later, Savage moved to continue the three-day jury trial, alleging her attorney's illness. Attorneys for SMS did not object to the motion for continuance, but of importance herein, they did object to the change of any of the discovery deadlines imposed in the existing scheduling order. On November 9, the motion for continuance was granted, and the court scheduled the new jury trial for August 22, 2022, but the court maintained the discovery deadlines set forth in its original order as requested by SMS.

The case proceeded. On May 19, 2022, SMS filed the present motion for summary judgment. Savage moved for a thirty-day extension to respond to the motion for summary judgment, and on June 9, the motion to extend was granted. On June 22, Savage's attorney filed a motion to withdraw. On June 27, before the motion to withdraw was granted, Savage's attorney filed a pleading styled "Memorandum Response to Motion to Reconsider." However, the substance of the appellant's pleading was a response to SMS's motion for summary judgment. On July 5, 2022, the motion to withdraw was granted. At this point, SMS had filed a motion for summary judgment, and Savage had filed a response. However, the summary-judgment pleadings continued.

On July 11, SMS filed a reply to Savage's response to the motion for summary judgment. And on August 19, a new attorney entered her appearance for Savage. The new attorney requested a hearing on the pending and briefed motion for summary judgment. The court ordered a hearing on the motion for summary judgment to be held on December 14.

On November 29, Savage's attorney filed a motion to supplement its responses to the motion for summary judgment. The new attorney argued that "plaintiff has now been able to locate and retain Dr. Shahryar Ahmadi, an orthopedic surgeon, who treated her for her injuries arising from the accident that is the subject matter of this litigation" and that Dr. Ahmadi had prepared an expert report in the matter. As one would anticipate, SMS filed an objection to the request, citing the previous scheduling order that governed discovery deadlines.

On December 14, the hearing on SMS's motion for summary judgment was held.  At the hearing, attorneys for SMS and Savage argued in support of their respective positions. The court stated in pertinent part that "July was the time to have—before July to have an expert."  The court then concluded without any additional comment or explanation:  "All right.  The court heard the arguments of both parties.  The court is going to grant the defense's motion for summary judgment."  On December 20, the court entered an order granting defendant's motion for summary judgment, finding that

> the court being well and fully advised of the appliable law and facts, and the reasons set forth in the motion, finds that the Defendant's Motion should be and is hereby, GRANTED.  IT IS THEREFORE ORDERED and ADJUDGED that all of the plaintiff's claims against SMS Trucking, Inc., should be and hereby are dismissed with prejudice.

## II.  *Arguments on Appeal*

Savage argues on appeal that (1) the circuit court erred in granting summary judgment because she did not identify an expert witness; (1)_the circuit court erred in granting summary judgment on her claim for loss of earning capacity; (2) the circuit court erred in granting summary judgment on the issue of her claim for punitive damages; and (3) the circuit court abused its discretion by denying Savage's motion to supplement her response to the motion for summary judgment.

We are at somewhat of a disadvantage in this appeal because the circuit court did not explain why it granted summary judgment other than to respond to Savage's request at the hearing for additional time to identify an expert witness, stating, "July was the time to have—before July to have an expert."  The circuit court did not explain why it granted summary

7

judgment on appellant's claim for loss of earning capacity or for punitive damages or why "all of the plaintiff's claims against SMS Trucking, Inc., should be and hereby are dismissed with prejudice." To that end, to understand the import of Savage's arguments on appeal, we are forced to review all the pleadings pertinent to the motion for summary judgment filed by SMS.

To begin the analysis, we first note that SMS did *not* file a motion for summary judgment on the issue that SMS or its employee driver, Kirkland, was not negligent. Perhaps, there are genuine issues of material fact on the issue of negligence. And we note that SMS did not request that the case be dismissed. Rather, SMS argued in its motion for summary judgment three specific elements of damages that Savage could not prove without expert-witness testimony, and because Savage had not identified an expert witness, those three specific elements of damages should be dismissed on summary judgment.

First, SMS argued that because Savage did not identify an expert witness, Savage could not prove that the medical treatment she incurred shortly after the accident and the orthopedic medical treatment she incurred approximately a year later were caused or necessitated by the accident. SMS essentially argued that without expert testimony, Savage could not prove that her medical treatment was caused by the accident and that those claims for damages should be dismissed on summary judgment. Second, SMS argued that because Savage did not identify an expert witness, Savage could not prove her claim for loss of earning capacity in the future. And third, SMS claimed that Savage had not met proof with proof and that Savage's claim for punitive damages should be dismissed by summary judgment.

Rule 56 of the Arkansas Rules of Civil Procedure governs disposition of summary-judgment cases. The object of summary-judgment proceedings is not to try the issues but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. Ark. R. Civ. P. 56; *Rowland v. Gastroenterology Assocs., P.A.*, 280 Ark. 278, 657 S.W.2d 536 (1983). Therefore, the first consideration in reviewing a motion for summary judgment is whether the moving party established a prima facie showing that he was entitled to summary judgment. The standard of review for summary judgment has often been stated: "In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered." *Mashburn v. Meeker Sharkey Fin. Grp., Inc.*, 339 Ark. 411, 414, 5 S.W.3d 469, 471 (1999) (citing *Nixon v. H&C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991)). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes v. Outdoor Living Ctr., Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell v. St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison v. Charles E. Davis & Assocs., Inc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

A. Failing to Designate an Expert Witness

Savage argues that summary judgment should not have been granted on the issue of medical causation for failing to designate an expert witness. Initially, we note that there are

two different medical treatments at issue in this motion. First, Savage received medical treatment immediately after the accident. Second, approximately a year later, Savage received medical treatment from an orthopedical surgeon. Our analysis is different for each of these claims for medical treatment as explained below.

Summary judgment may be granted only if the moving party has shown by evidentiary items that there is not a material question unanswered. *Mashburn*, 339 Ark. at 414, 5 S.W.3d at 471. Here, the trial court entered a summary judgment that dismissed Savage's personal-injury claims in toto rather than identifying which of the two distinct times of treatment required expert testimony concerning causation. SMS relies on the Federal Employer Liability Act cases of *Pryor v. Union Pac. R.R. Co.*, 2020 WL 5834248 (E.D. Ark. Sept. 30, 2020), and *Crago v. Union Pac. R.R. Co.*, 2010 WL 147900 (D. Neb. Jan. 11, 2010), which require that an injured party must have an expert witness to prove causation. We disagree that these FELA cases are dispositive. *Pryor* was a toxic-tort case where the allegation was that Pryor's bladder cancer was caused by working around corrosive chemicals. This was beyond the knowledge of the average juror, so expert testimony was required to establish causation. Likewise, *Crago* was a cumulative-injury case, and an expert was necessary to show how cumulative injuries could result in his damages. Therefore, we find these FELA cases unpersuasive on this issue.

First, we address the medical treatment Savage received on the day of the accident. Arkansas courts have consistently held that proximate cause is that which, in a natural and continuous sequence unbroken by any efficient intervening cause, produces the injury, and

10

without which, the result would not have occurred.  When there is evidence to establish a causal connection between the negligence of the defendant and the damages, it is proper for the case to go the jury.  *Chamber v. Stern*, 347 Ark. 395, 64 S.W.3d 737 (2002).  The testimony of the injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred.  *Bell v. Stafford*, 284 Ark. 196, 680 S.W.2d 700 (1984).  In *Bell*, our supreme court gave the following example:

> [I]f a litigant suffered a specific injury in an accident and was immediately taken to a hospital emergency room for treatment of only that specific injury the injured party's testimony would be sufficient to establish the necessity of the medical expense as a result of the accident. However, expert testimony would normally be required to prove the necessity of the expense when, as here, expenses for hospital tests were incurred many months after the accident, none of the physicians in attendance immediately after the accident referred the litigant either to the admitting doctor or to the hospital, and the expenses on their face do not appear to be related to the accident.

284 Ark. at 199, 680 S.W.2d 702–03.

Under the supreme court's reasoning in *Bell*, Savage was competent to testify to the issue of the necessity of the medical expenses that she incurred shortly after the accident. "Necessary" means causally related to the tortfeasor's negligence.  *Id.*  Arkansas Code Annotated section 16-46-107(a) (Repl. 1999) provides that if a patient shows that she received medical bills from a provider of medical services and that such expenses were incurred in connection with the treatment of the injury that is the subject of the litigation, then she is considered a competent witness to identify the medical bills.  Further, testimony from an expert witness in this situation regarding the reasonableness and necessity of medical expenses is not required.  Ark. Code Ann. § 16-46-107(b). *Williams v. Walker*, 77 Ark. App.

95, 72 S.W.3d 131 (2002).  As to the issue of the necessity of an expert witness to establish causation to the medical treatments by Dr. Alexander and Arkansas Orthopedics shortly after the accident, we find that this issue was not appropriate for summary judgment.  There are issues of material fact that remain unanswered as to the nature and extent of Savage's injuries and medical expenses.  Savage was competent to testify to her medical expenses incurred shortly after the accident that the summary judgment quashed under the mistaken belief that an expert witness was necessary to establish causation. The circuit court failed to differentiate between the necessary medical expenses incurred immediately after the accident with Dr. Alexander and Arkansas Orthopedics and from those incurred a year later.  We have held that matters of causation are questions of fact for the jury to decide.  *See, e.g., First Com. Tr. Co. v. Rank*, 323 Ark. 390, 915 S.W.2d 262 (1996); *see also Catlett v. Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991).  The same holds true for matters of credibility.  *Diamond State Towing Co. v. Cash*, 324 Ark. 226, 919 S.W.2d 510 (1996).  The burden of sustaining a motion for summary judgment is always the responsibility of the moving party.  *Cordes*, 301 Ark. 26, 781 S.W.2d 31.  Here, Dr. Alexander was the treating physician immediately after the accident and was listed as a fact witness.  As such, Dr. Alexander can testify to the reasonableness and causation of the medical treatment he provided.  We find that the combined testimony of Savage and Dr. Alexander create a material issue of fact that remains unanswered as to Savage's recovery of compensatory damages for the injury itself and for any medical expenses provided by Dr. Alexander for treatment.   We reverse and remand

12

summary judgment on the issues of damages for injuries sustained in the accident and the initial medical expenses for the treatment of the injury.

As to the subsequent surgeries on her left shoulder, *Bell* held expert testimony would normally be required to prove the necessity of the expense when the treatment was many months after the accident. Here, Savage's subsequent surgeries were over a year past the date of the accident, and there was no showing that she had been referred to Dr. Ahmadi by the treating physician, Dr. Alexander, or to UAMS for continued treatment. In essence, because Savage failed to identify an expert witness, there is no competent testimony that this medical treatment incurred over a year after the accident was necessary or related to the accident. Summary judgment may be granted only if the moving party has shown by evidentiary items that there is not a material question unanswered. *Mashburn*, 339 Ark. at 414, 5 S.W.3d at 471. Savage's testimony, standing alone, cannot establish that the necessity of the subsequent treatment was causally related to her fall. *Dollar Gen. Corp. v. Elder*, 2020 Ark. 208, 600 S.W.3d 597. While there was some suggestion that the subsequent surgeries were related to the accident, as shown by the MRI taken shortly after the accident, Savage has the burden to provide competent evidence that the surgeries were related to her injury. To do so, in this situation, she must have expert testimony to show causation and that the three surgeries and corresponding medical expenses were necessary. *Id.* Because Savage did not meet proof with proof on this essential element, summary judgment was properly granted on Savage's claims. *Cross v. W. Waste Indus.*, 2015 Ark. App. 476, 469 S.W.3d 820 (affirming

13

summary judgment for the defendants on the basis of lack of causation evidence). We affirm partial summary judgment on this issue.

## B. Loss of Earning Capacity

Savage argues that the circuit court erred in granting a summary judgment on the issue of loss of earning capacity. Specifically, Savage has alleged in her responses to SMS's interrogatories that for five years since the accident, the left side of her body, left arm, left shoulder, left leg, left hip, and left side of her head continue to cause pain, and she states that she has limited movement in her arm, walking for long periods of time is painful, and sitting too long is painful, and she has been unable to work.

Arkansas Model Jury Instruction–Civil 2207 provides that the measure of damages for "Loss of Earning Capacity is 'the present value of any loss of ability to earn in the future.'" Damages for loss of earning capacity may be recovered only upon proof that an injury is permanent. *Wheeler v. Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993). A permanent injury is one that deprives the plaintiff of her right to live her life in comfort and ease without added inconvenience or diminution of physical vigor. *Id.* The Arkansas Supreme Court has stated that permanency must be proved with reasonable certainty, *e.g.*, *Welter v. Curry*, 260 Ark. 287, 539 S.W.2d 264 (1976), but that the seriousness of the injury itself may establish permanency, *e.g.*, *Bailey v. Bradford*, 244 Ark. 8, 423 S.W.2d 565 (1968); *Duckworth v. Stephens*, 182 Ark. 161, 30 S.W.2d 840 (1930). The jury may rely on lay testimony without expert corroboration in finding permanency. *E. Tex. Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 545, 713 S.W.2d 456, 460 (1986). Although whether a permanent injury exists is not

14

to be left up to speculation and conjecture on the part of the jury or court, proof of this element does not require the same specificity or detail as does proof of loss of future wages. *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983). This is because a jury can observe the appearance of the plaintiff, her age, and the nature of the injuries that will impair her capacity to earn. *Id.* Proof of specific pecuniary loss is not indispensable to recovery for this element. *Id.* It is to be determined by the application of the common knowledge and experience of the jurors to the facts and circumstances of the case. *Coleman v. Cathey*, 263 Ark. 450, 565 S.W.2d 426 (1978). Moreover, lay testimony without expert corroboration is sufficient to show permanent injury. Viewing that testimony in a light most favorable to Savage, a jury could conclude that consequences of an injury that continued over five years will occur in the future. *Bailey*, 244 Ark. 8, 423 S.W.2d 565.

SMS argued but did not introduce any evidence, expert or otherwise, to show that Savage did not have permanent injuries and loss of earning capacity. SMS relies on *Cates*, *supra*, for the proposition that expert testimony is required to prove loss of earning capacity. SMS's reliance on *Cates* is misplaced. Initially, we observe that *Cates* discusses loss of future wages and not loss of earning capacity. Those are separate elements of damages. Further, in *Cates*, although the supreme court reversed an award of damages for loss of earnings, the judgment was reversed because neither the plaintiff nor his physicians testified that Cates would suffer a loss of earnings in the future, and the supreme court held that the award was, therefore, speculative.

Here, Savage has stated in her verified responses to SMS's interrogatories that for five years since the accident, the left side of her body, left arm, left shoulder, left leg, left hip, and left side of her head continue to cause pain, and she states that she has limited movement in her arm, walking for long periods of time is painful, and sitting too long is painful, and she has been unable to work. As a result, the burden of sustaining a motion for summary judgment on the issue of permanent injury and loss of earning capacity was not met, and summary judgment was not appropriate since issues of fact remain to be determined. We reverse and remand the summary judgment on the issue of loss of earning capacity.

## C. Punitive Damages

Savage argues that the circuit court erred in granting summary judgment on the issue of punitive damages. The pleadings, depositions, and answers to interrogatories showed that Savage noticed Kirkland was attempting to remove the dock restraint by attaching the trailer to the dock before Savage was through unloading the trailer. Savage said she saw Kirkland "messing" with the control box on the dock restraint and told him to leave it alone and that she would unlock it when she was finished. She also told him that he could not leave until she had him sign the documents verifying the load had been removed. Debbie Reyes, Savage's coworker, testified she unlocked the glad safety lock with Savage's permission. Reyes testified in her deposition that she also told Kirkland that he could not leave until Savage was through unloading and he had been given the unloading documents. She denied that she removed any of the other restraints. Kirkland denied in his deposition that he had removed any of the safety locks. The undisputed testimony shows that his truck had been

16

released from the docking restraint and that the chocks on his tires had also been removed, allowing him to pull away from the dock, causing the accident.

In order to warrant a submission of the question of punitive damages, there must be an element of willfulness or reckless conduct. The Arkansas Supreme Court has defined wantonness and conscious indifference to the consequences:

> Wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortuous character, such conduct as manifests a "disposition of perversity." Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of danger, with indifference to consequences and with absence of all care. . . . It is not necessary to prove that the defendant deliberately intended to injure the plaintiff. It is enough if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff.

*Nat'l By-Products, Inc. v. Searcy House Moving Co., Inc.*, 292 Ark. 491, 493–94, 731 S.W.2d 194, 195–96 (1987) (quoting *Ellis v. Ferguson*, 238 Ark. 776, 778–79, 385 S.W.2d 154, 155 (1964)). On appeal, we view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Akers v. Butler*, 2015 Ark. App. 650, 476 S.W.3d 183. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). With this standard in mind, we turn to the evidence presented by the parties in their depositions and other documents filed in connection with the summary-judgment motion. *Id.* The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a

17

conclusion. *Wagner v. Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007). When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 463, 231 S.W.3d 711, 715 (2006). Moreover, summary judgment is not proper where it is necessary to weigh the credibility of statements to resolve an issue. *Wade v. Bartley*, 2020 Ark. App. 136, 596 S.W.3d 555 (citing *Adams v. Wolf*, 73 Ark. App. 347, 353, 43 S.W.3d 757, 762 (2001)). Kirkland denied that he removed the safety restraints as alleged by Savage. Here, Savage alleges the following facts: Kirkland was told that he was not to leave until his loading documents had been signed by him; Savage told him specifically told not to disengage the safety locks when she saw him "messing" with the control box on the dock restraint; Kirkland failed to check the trailer to see if Savage was clear of his trailer; and Kirkland moved his truck away from the dock and failed to remove the dock plate, which was still attached to the truck when the accident occurred. Reyes also testified she told him he was not free to leave until Savage had him sign the paperwork and that she removed the glad hand lock but not the other two locks. Kirkland denied that he removed the safety restraints. Depending on the credibility as determined by the jury, the facts could support the allegation that Kirkland acted with a wanton and conscious disregard for Savage's safety by his reckless conduct of removing the safety restraints and attempting to drive away from the dock while Savage was still in the trailer. Thus, a genuine issue of fact remains as to Kirkland's intent by moving his truck without following the safety protocols in place to prevent injury and thereby causing the injury to Savage. We reverse and remand the summary judgment as to punitive damages.

18

D.  Motion to Supplement Record

Savage argues that the circuit court improperly denied her motion to supplement her response to SMS's motion for summary judgment and that this was an abuse of discretion by the circuit court.  An abuse of discretion is a high threshold that does not simply require error in the court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.  As noted above, the motion for summary judgment was filed by SMS on May 19, 2022.  Six months later on the eve of the hearing, on November 29, 2022, Savage filed a motion to supplement the record with the identity of a new expert medical witness.  Savage first identified her witnesses on September 30, 2021.  She did not identify any expert witnesses.  For the next year, SMS attempted in vain to obtain the identity of an expert witness.  Then, on the eve of the hearing, Savage moved to supply the name of a new expert witness.

Savage sought leave, claiming she has been "able to locate and retain Dr. Shahryar Ahmadi, an orthopedic surgeon who treated Savage for injuries arising from the accident" and therefore should be permitted to untimely respond to SMS's motion for summary judgment.  Savage divulged she had retained Dr. Ahmadi one week prior to the trial.  In the motion for leave to supplement, Savage also sought permission from the circuit court to conduct additional discovery.  The disclosure of Dr. Ahmadi was significantly past the date allowed by the circuit court's scheduling order.  Savage bears the burden of showing that the circuit court's denial of a continuance for additional discovery was an abuse of discretion.  Here, Savage did not show that the circuit court acted improvidently, thoughtlessly, or

19

without due consideration.  Further, contrary to the clear and unambiguous language of Arkansas Rule of Civil Procedure 56(f), Savage failed to satisfy the requirement of an affidavit to demonstrate additional discovery was necessary.  *See McWilliams v. Schmidt*, 76 Ark. App. 173, 189, 61 S.W.3d 898, 910 (2001) ("If the appellant cannot demonstrate how additional discovery would have changed the outcome of the case, we cannot say that the trial judge abused his discretion [in granting summary judgment.]"); *Loghry v. Rogers Grp., Inc.*, 348 Ark. 369, 374, 72 S.W.3d 499, 502 (2002).  Further, Savage had over a year to "find" Dr. Ahmadi and identify him as an expert witness.  We do not find that the denial of the motion for additional discovery and motion to supplement response to motion for summary judgment was an abuse of discretion.  We affirm.

Affirmed in part; reversed and remanded in part.

WOOD and HIXSON, JJ., agree.

*Sheila F. Campbell*, for appellant.

*Barber Law Fim, PLLC*, by: *Scott M. Strauss* and *Casey L. Mynatt*, for appellee.